[Filed April 30, 1892.]

## TEMPERANCE HOUSE *v.* HANFORD FOWLE.

HUSBAND AND WIFE—CONTRACTUAL RELATION—DOWER AND CURTESY.—A husband and wife cannot contract with each other concerning the possible estate of dower or curtesy either may have in the lands of the other by virtue of their marriage.

DOWER—EXECUTION SALE—ADMINISTRATION.—A wife's right to dower is not affected by an execution, or administrator's, sale of her husband's land.

JUDICIAL SALES—CAVEAT EMPTOR—ESTOPPEL.—All judicial sales in this state are subject to the doctrine of *caveat emptor*, and do not operate as estoppels in favor of a purchaser and against one having an adverse interest in the land sold, unless the latter, to induce the purchaser to buy, made some representation against such interest upon which the purchaser had a right to, and did rely.

SUBROGATION—SATISFACTION OF MORTGAGE—DOWER ESTATE—ADMINISTRATOR'S SALE—CASE IN JUDGMENT.—The facts in this case are examined, and it is *held*, that the defendant having purchased the land in question at an administrator's sale, and the money paid by him having been applied to the satisfaction of a mortgage on the land in which the plaintiff's dower, together with the fee, was charged as security for the payment of her deceased husband's debt, the defendant should be subrogated to the rights of the mortgagee, as against the dower estate.

Polk county: R. P. BOISE, Judge.

Defendant appeals. Modified.

The plaintiff alleges in her complaint that she is the owner for her lifetime of, and a tenant in common with the defendant in the real property in controversy; that the defendant owns the said real property in fee simple, subject to the life estate of the plaintiff therein; that the plaintiff and defendant are unable to agree as to a division of the

above described property, and prays that the court determine the respective rights of the parties and partition the property according to their respective interests.

The answer, after denying each allegation of the complaint, alleged a further defense as follows: That on or about the first day of October, 1887, he became the purchaser of the lands described in plaintiff's complaint; that said lands belonged to the estate of R. M. Montgomery, who died at Corvallis, Benton county, Oregon, on the third day of April, 1886; that said estate was administered upon in said county of Benton by S. L. Shedd, and said lands were sold by order of the county court of said county of Benton, in the state of Oregon, to pay a balance of one thousand eight hundred dollars, then due on a mortgage on said lands, and for other purposes, and that said lands were ordered to be sold by said county court at Dallas, on the first day of October, 1887, and were bid off by this defendant at said sale for the sum of three thousand five hundred and five dollars, which bid was accepted, and the lands struck off to him by the said administrator; that said lands were advertised and sold in a body without any reservation of dower or other interest in said lands; that the defendant observed the utmost caution, and, before the sale, saw the plaintiff and informed her that he intended to bid on said lands at the sale then advertised, if everything was fair and there was a good and perfect title to the same.

The plaintiff informed the defendant that the title was good; and the defendant, learning that she was represented by counsel learned in the law, and that said sale was conducted under the direction of the Benton county court, had the utmost confidence that everything was and would be conducted in the utmost good faith and fairness. Said plaintiff represented to the defendant that said lands were free from all incumbrances, and that the plaintiff did not then or at any time give any intimation that she

claimed any dower or other interest in said lands. And defendant alleges, that after said lands were bid off, and before the money was paid, he sought another interview for the purpose of ascertaining if there was any obstacle in the way of his acquiring a good and perfect title to said lands and the whole of them, and the plaintiff assured the defendant that his title was good, and at no time gave any intimation that she then claimed or intended to claim any interest or dower therein; and defendant alleges that the plaintiff fully and clearly understood that the defendant was seeking to find out if there was any defect of title or obstacle to his acquiring a full and complete title to said lands and to the whole thereof; and defendant alleges that the plaintiff fradulently concealed her intention to claim dower therein, and that the defendant was misled thereby.

Defendant alleges that at the time of the purchase of said land in 1887, he was a resident of the state of Iowa, merely sojourning in Oregon, intending to purchase a home if he found one suitable and to be had on fair terms; that he was ignorant of the laws of Oregon in relation to what constituted a title to real property, but that he trusted to the representations of the plaintiff and the fact that it was under the direction of the county court. The defendant alleges that he paid a full consideration for said lands at the time and of the whole thereof; that he would not have paid three thousand five hundred and five dollars, or any other sum, had he known it was subject to dower, and that the plaintiff's claim of dower is a complete surprise to him; that since his purchase he has made lasting and valuable improvements on the buildings on said lands to the value of one hundred dollars,—in clearing lands, fifty dollars, and repairing fences, one hundred and fifty dollars.

On the ninth day of January, 1885, the plaintiff and her then husband, R. M. Montgomery, now deceased, joined in a mortgage on the portion of lands first described in plaintiff's complaint, a copy of which said mortgage is

XXII OR.—20.

annexed to the answer as exhibit A; that plaintiff and her
then husband borrowed of one Elizabeth Smith the sum of
two thousand five hundred dollars, and secured the same
by the mortgage on said land; that said mortgage was duly
executed by plaintiff and her said husband, and duly
recorded in Polk county, Oregon, and was never fore-
closed or paid except in part; that one thousand eight
hundred dollars of said mortgage was due and unpaid
at the date of said sale, and that said sale was for the
purpose of providing funds for the payment of the amount
due and unpaid on said mortgage, and to provide for the
plaintiff's support and the payment of debts, and the costs
of administration; that the mortgage was a lien on said
lands, and was paid by said defendant, and that said
defendant became thereby subrogated to the rights of said
mortgagee, and holds said mortgage against said plaintiff
for the payment of said one thousand eight hundred dol-
lars and interest from the date of payment, which amount
would be more than half the value of said lands; and that
the plaintiff could in no event be entitled to more than the
residue of said lands after the payment of one thousand
eight hundred dollars and the interest thereon.

The answer then alleges that on the twenty-fourth of
March, 1880, the plaintiff, for a valuable consideration, sold
and conveyed to her husband, R. M. Montgomery, all her
interest and dower in said real property, and that such sale
had been adjudged void by the circuit and supreme courts
at the suit of the plaintiff. It is then alleged that Mont-
gomery made said purchase in good faith, and that the
money which the plaintiff received had never been paid
back to him; that though three hundred dollars is the con-
sideration named in said deed, the real consideration was
one thousand dollars; that said deed and the acquiescence
of the plaintiff in the sale of said lands operated as a fraud
on the defendant; that said line of conduct was adapted
to deceive and defraud the defendant, and that defendant

ought to be subrogated to the rights of Montgomery and recover the full compensation for said dower.

The reply denies all the new matter in the answer. The cause was referred, and the evidence taken in writing. At the hearing the court found the equities with the plaintiff and made a decree of partition from which the defendant brought this appeal.

*F. A. Chenoweth,* for Appellant.

*J. J. Daly,* for Respondent.

STRAHAN, C. J.—No question as to the sufficiency of the pleadings was made by either party in the court below or in this court, and therefore they will not be further noticed.

It is conceded by the stipulation on file that R. M. Montgomery died seized of the land in controversy; that at the time of his death the plaintiff was his wife, and that he died intestate. The plaintiff is, therefore, entitled to dower in said lands unless some of the matters alleged in the answer defeat it.

A suit between these same parties was before this court involving the same real property, and is reported in 20 Or. 163. In that case the plaintiff sought to recover her dower, and the defense was a deed made by her to her then husband, R. M. Montgomery, in his lifetime, and we held that the statutes of this state enabling husband and wife to contract with each other did not extend to or include estates or interests growing out of the marriage relation; so that the effect of that deed, which is here pleaded and offered in evidence, may be dismissed without further remark.

The next defense relied upon is that the defendant purchased said real estate at a sale made by the administrator of R. M. Montgomery, deceased, by order of the county court of Benton county, for the payment of the debts of said deceased. No doubt it is competent for the legislature to provide that at such sales the widow's dower shall also

pass to the purchaser, and that she may receive in money such proportion of the proceeds of the sale as would adequately represent her interest in the land; but it has not done so in this state, and therefore authorities under statutes differing from our own on that subject could have no application. The construction of our statute authorizing sales by administrators to pay debts of the deceased, has been, ever since its enactment, that such sales did not affect the widow's dower. Nor does an execution sale of the hus-band's lands, whether made while he is living or after his death, transfer to the purchaser the wife's dower, whether inchoate or otherwise.

The defendant's next contention is, that under the particular facts of this case the plaintiff is estopped from claiming her dower. The facts relied upon to create the estoppel are fully set out in the defendant's answer, but we think they are entirely insufficient. It may be conceded, and no doubt is true, that the defendant acted in the most perfect good faith. There is nothing shown indicating bad faith on either side. The defendant was chargeable with notice of what the statutes contain and of the nature of the title he would acquire at such sale. In addition to this, the rule of *caveat emptor* applies to all judicial sales in this state. It was the defendant's privilege and his duty to investigate the title before the sale, and for that purpose to employ such assistance as he might deem necessary; but he did not resort to the usual methods to ascertain the state of the title. An unlearned woman unacquainted with the forms of conveyancing or the methods of business, could not be regarded as a safe guide or source of information from whom the true state of the title could be learned. It will be noticed that the defendant did not ask the plaintiff at either of the conversations he had with her whether she had or claimed any interest in the land as dower or otherwise. What she told him was that the title was good. That statement was literally true,

and it is not equivalent to the statement that she had no dower in the land, and that if he would purchase at the sale he would acquire a fee simple title free from all incumbrances. It does not any where appear that the defendant relied upon the statements or representations of the plaintiff, and was thereby induced to make the purchase. What the defendant did rely upon was that he ascertained that the plaintiff was represented by counsel learned in the law, and that said sale was conducted under the direction of the county court. These facts induced the defendant to believe that everything was and would be conducted in the utmost good faith and fairness. The principles of the law of estoppel, sought to be applied to this case, are too elementary to require anything more than a reference. (2 Herman, Estoppel, § 960.)

But the defendant contends that, inasmuch as there was a mortgage on the land at the time of the sale by the administrator for about one thousand eight hundred dollars and interest, and that a part of the purchase money paid by the defendant to the administrator was used by him to pay off the mortgage, the defendant ought to be subrogated to the rights of the mortgagee. If that were so, it is not perceived how it could be available as a defense in this case. The code expressly authorizes lien holders to be made defendants in partition suits except those who have liens by judgment or decree. (Code, § 425.) But on what ground can the defendant claim to be subrogated? He was not a party interested in the property affected by the mortgage, and did not in fact pay off the mortgage. What he did was to pay to the administrator conducting the sale the amount of his bid, and the administrator applied the money, or so much as was necessary, in payment of the mortgage. Subrogation, as a matter of right, independently of agreement, takes place only for the benefit of insurers, or of one who, being himself a creditor, has satisfied the lien of a prior creditor; or for the benefit of a

purchaser who has extinguished an incumbrance upon the
estate which he has purchased; or of a coöbligor or surety
who has paid the debt which ought, in whole or in part, to
have been met by another; or of an heir who has paid the
debts of the succession; or of one who has paid his own
debt, the burden of which has for a valuable consideration
been assumed by another. (Sheldon, Subr. § 3.)

The facts of this case do not bring it within this author-
ity, or any adjudged case we have been able to find. When
a purchaser extinguishes an incumbrance upon an estate
which he has purchased, he may be subrogated; but the
defendant did not purchase the plaintiff's dower. It was
not sold nor could it be sold in that proceeding. It was
the estate of the intestate which was sold to pay his debts,
and the money which was received at the sale was applied
for that purpose and no other. When the debt which the
intestate owed was paid by the administrator, as a neces-
sary consequence it released the plaintiff's dower from
the mortgage. The payment of that debt and the release
of the plaintiff's interest was a duty which the intestate
owed to her in his lifetime, and the same duty devolved on
his administrator by his death. Besides, it cannot be denied
that the plaintiff's equity to have the proceeds of that sale
applied in exoneration of her property covered by the
mortgage is as strong as the defendant's claim to keep the
lien alive for his benefit. If the wife had been indebted,
or if her interest in the land had been sold with the
deceased husband's interest, there would have been more
foundation for the appellant's contention. But in addition
to this, if the sale at which the defendant purchased had
been upon a decree of foreclosure, which would have car-
ried the plaintiff's interest in the land as she was a party
to the mortgage, still she would have had her dower in the
purchase money, to be ascertained and paid to her after
paying off the mortgage. (*Butler* v. *Smith*, 20 Or. 126.) It
may be conceded that subrogation is founded on the prin-

ciples of equity and benevolence (*Webster and Goldsmith's Appeal*, 86 Pa. St. 409), but to render its application practical, the claim must have substantial equity growing out of the nature of the transaction itself, and it must not work a wrong or injury to another. (*Erb's Appeal*, 2 P. & W. 296.) For these reasons I think the decree appealed from ought to be affirmed. But my associates are of the opinion that under the peculiar facts of this case, which are unnecessary to detail as disclosed by this record, the defendant has brought himself within the doctrine of equitable subrogation, and should be subrogated to the rights of the mortgagee, whose mortgage was an incumbrance on plaintiff's dower, and which was paid with the money of defendant.

It follows, therefore, that the decree of the court below must be modified, and a decree entered in accordance with the opinion of the majority of this court.