### SENECA COAL & COKE CO. et al. v. QUISENBERRY et al.

No. 22314.   Opinion Filed Jan. 19, 1932.

Hayes, Richardson, Shartel, Gilliland & Jordan and Eugene Jordan, for petitioners.

Fred A. Graybill, for respondents.

KORNEGAY, J. This is an original proceeding to review an award of the Indus-

trial Commission. The record shows that the employer's first notice of injury was received February 11, 1930, and on February 20th there was a first payment of compensation "for severely burned eyes and forehead." On March 29, 1930, there was received the employee's first notice of injury, claiming partial loss of vision in both eyes and face disfigurement and permanent impairment to vision in eyes. The accident occurred January 31, 1930. It was caused by a powder explosion in a hole drilled in coal mining operations.

On the 11th of December, 1930, hearing was started, but was adjourned to the 18th of March, 1931. The attorney for the coal company and the insurance company denied the injury and the claim of damage to both eyes, but admitted the injury to one eye, and admitted some disfigurement. Compensation was paid to March 11, 1931, a period of 40 weeks, and the hearing was had on partial loss of vision in both eyes and disfigurement.

The claimant told of the accident and of being treated by Dr. Braswell, and of his inability to work up to now, very little vision in the right eye, left eye impaired by the accident. That he had not used glasses before the accident and had to use them now in the sun. That he was 38 years of age.

Dr. Harry Price testified about an examination on December 18, 1930, and March 13, 1931. He detailed the scarred condition of the various portions of the right eye. vision in that eye being 20/100, and a marked shaped notch over the upper eye lid. Left eye showed much scarring of the conjunctiva and cornea on the upper part, which did not completely cover the pupil. Vision in that eye was 20/30. His estimate of the loss of vision was 60 per cent. in the right eye and 8½ per cent. in the left eye. He detailed the condition of the face, and the powder marks being permanent. He further stated that the claimant would not have 60 per cent. of the use of the right eye by reason of the dazzling connected with it, and it would be better to put a blind glass over it. He claimed that 90 per cent. vision in the left eye was what was left. He described the condition of the disfigurement to the face by reason of the powder marks, and the adhered condition of the conjunctiva, and the turning of the eye, scars over the cornea and pupil, and the technical term "symbleharon" was used by him, which is defined in Dorland's Medical Dictionary as "adhesion of the lids to the eyeball." There was a scar over the cornea barely touching the pupil. The scarring of the face was practically over the entire front of the face. The disfigurement would be permanent, and the powder marks would be permanent. He was asked to examine the party by Dr. Braswell first.

Dr. Braswell's version of the vision was slightly different. He gave the party 20/100 vision in one eye, and 20/30 in the other, and said it was permanent.

The Commission awarded $1,500 for the disfigurement, and allowed the party 31 per cent. for eye injury, figuring one eye 54 per cent. loss, 8 per cent. on the other, added them together and divided them, and also finding a serious and permanent disfigurement to his face. The eye disability was figured on the total compensation schedule, and followed several previous decisions of this court. The disability was based on a lump sum of $1,500. There was some correction in the figuring of the amount on April 26th.

The appeal is brought here and the matters involved briefed. Attack is made on the award, and the first proposition, found on page 5 of the brief of petitioners, is that the evidence would not justify the making of the award on the basis of 54 per cent. vision in one eye gone and 8 per cent. vision in the other, but the testimony, however, of Dr. Braswell, who made the examination, would have justified a larger award, probably on the basis of 60 and 10 per cent. and a larger award in the neighborhood of 35 per cent.

The second proposition is that the Commission, so far as the eye injuries were concerned, went on the wrong basis. An ingenious argument is made to the effect that if the Legislature saw fit to make the loss of one eye 100 weeks and the loss of both eyes 500 weeks, therefore the loss of one eye should be figured relatively, and also that there is no loss in the other eye, and for that reason there was a mistake made in the compensation. An insistence is made that the award in this case should have been under the head of "Other Cases," which was the 300-week limitation, instead of under the 500-week limitation. The construction of these provisions of the statutes, heretofore repeated by this court, is the other way, and the 31 per cent. for both eyes corresponds to the previous decisions of this court and with the testimony before the Commission, which appears to be credible.

Reference is made to the case of Maryland Casualty Co. v. Industrial Commission, 139 Okla. 302, 282 P. 293, and it is reasoned by the brief-maker that 100 weeks being one-fifth of 500 weeks, therefore the loss of one eye would be the equivalent of 20 per cent. total permanent disability, and that 54 per cent. of one eye loss is equivalent to 10.8 per cent. of total permanent disability, and that by adding to it an allowance for the loss 'in the other eye, the result would be arrived at as 18.8 per cent. total disability instead of 31 per cent. We do not see the force of the argument, and we think that this question has been thoroughly settled by previous decisions of this court.

The third and fourth propositions are that where the Commission makes a finding based on total disability, as in this case, the Commission is not authorized to award compensation for any period of temporary total disability, and that the Commission is not authorized to add anything for disfigurement in a case of that sort. Argument is further made that figuring 300 weeks as the limit for eye injury, 100 weeks' total disability, and $1,500 for disfigurement, reduced to weeks at $13.50 a week, would make 11 weeks more than total permanent. The case of Federal Mining & Smelting Co. v. Warman, 145 Okla. 281, 292 P. 865, is appealed to, and also the case of Thompson v. Industrial Commission, 138 Okla. 166, 280 P. 597, is referred to and quoted from.

In this case the specific allowance for disfigurement was $1,500. Apparently no complaint is made of the disfigurement allowance being excessive, but the criticism is leveled at the proposition of allowing a percentage of total disability, at the same time allowing a temporary total disability. It has been usual to allow for the time that one is disabled by reason of sickness arising from the accident, and to add thereto the percentage of total disability. In this case, the claimant did not receive more compensation for his disfigurement than was allowable, and allowing for the disfigurement at $13.50 a week, thereby reducing to weeks, and adding the weeks allowed for temporary total disability and the weeks for eye loss, would not reach a total of 500 weeks that is allowable under the total disability provision.

The award is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and McNEILL, JJ., concur.